Ready for the next case this morning, Finlayson v. State of Utah, 19-4151. Counsel for appellant, please proceed. Yes, may it please the court, Andrew Parnes appearing for Mr. Finlayson, the appellant in this matter. I would reserve three minutes of my time, if I may. This case arises from a state post-conviction petition that was filed in 2005. Mr. Finlayson was unrepresented at that time in the state of Utah. There was no appointment for post-conviction counsel except by pro bono counsel. And two years later, Mr. Namba took the appointment pro bono in 2007. The file was discovered, the file was lost in 2009, alerted the court to this issue in 2011. And a year later, when a new counsel came in for the state, the state moved to dismiss for failure, lack of prosecution. And that was the district court dismissed it. It was affirmed on appeal in the state court petition was then filed in federal court, and it was dismissed on procedural grounds on that basis of the lack of prosecution. And we contend that that is not an adequate state rule. This is the first case that that was applied to. It was a rule that was not regularly followed in the vast majority of cases. There was one other unpublished decision where it was applied. However, it was not applied in the way in the manner in this particular case. And therefore, it's not an adequate rule on the lack of prosecution. Barnes about that. The I think you present this argument very, very well both today and in your briefing. But my question about it is, you know, you only have this hereman and these heremen that unpublished opinion that you're referring to. And so I think you're on solid ground and saying there's only one issue, one case that has applied rule 41 to a post conviction application. The problem, as your opponent points out, is that the statute, the Post-Conviction Relief Act, is very clear that the rules of civil procedure apply to post conviction proceedings. So there's really no question. I mean, we may wholly have, you know, maybe one unpublished opinion saying that in the context of a habeas action, rule 41, you know, can be invoked in federal court to involuntarily dismiss a habeas action for lack of prosecution. But because the federal rules of civil procedure so clearly apply, then there's really no question, even if there is a scarcity of case law, how do you respond to that on adequacy? On the adequacy ground, the issue is that while the civil rules apply generally, there is an overlay and that was in effect in 2005. And that overlay was the interest of justice exception to any procedural default in the state of Utah. That would be under Hearst versus Cook, which we rely on. And so when there was a procedural default of any kind to be applied, the court had to look at the underlying merits of the of the cases so that that blends into independence. And I understand your point, your argument on the interest of justice and Westinghouse on independence. But how does that play into adequacy? Because in the civil cases, all that's talked about in the civil cases, starting from Westinghouse, is some notion of an injustice. And the way that the injustice was looked at in Mr. Finlayson's case was simply that he could have an opportunity to file another post-conviction petition to raise these other claims and therefore there'd be no injustice. But they didn't look at the underlying merits, which is what's required, was required at the time in Utah. And therefore, they were applying this rule that was looked at in the regular civil context, but failing to look at it in the context of habeas corpus post-conviction petition as the state of Utah did. And therefore, it was a it was applied in a new manner in a way that had not been applied ever before. And that is why it is not adequate. It also relates to the independence that it is not a fully independent and they should look at the merits of it. However, in Finlayson, they didn't look at the underlying merits. Focusing on the adequacy again, and I need to follow up on Judge Backhart's point. Judge Holmes, can I interrupt you for a second? I'm missing. My screen does not have opposing counsel on it. And I'm looking in the percent participant list and I'm not showing her being on video. OK, now she's back. Yeah. Sorry. I was I was worried that she she we lost her and that she wasn't going to be able to fairly participate. Well, it's a valid point to worry about. Go ahead and add, if you would, Kevin, just add 30 seconds so that we don't. So put us back at 10. We'll take 30 seconds on this. There it is. All right. There we go. Let me let me let me follow up on this point. Is this additional requirement of interests of justice that you alluded to relative to post conviction default? Is that the reason that you cited the Adams versus state case as well? Yes. Well, well, that case is a limitations case. And it's not clear to me at all that that applies in this context where we're talking about rule 41B. Why would it be that Adams versus state says anything to us about how one would apply 41B? Well, what Adams versus state and Julian are limitation cases, however, Hearst versus Cook, which is where they derive their general rules of looking at the interests of justice, is a general procedural default. A second petition, new claims, timeliness, any other general procedural default in the state of Utah at the time of this petition. Not now, but at the time of this petition was controlled by Hearst versus Cook. Adams looks at those merits in the context of the timeliness. But Hearst versus Cook looks at them in the sense of a second petition and therefore any procedural default rule should be applied. Well, is there I mean, I'll revisit Hearst versus Cook with that in mind. But I mean, do you have any case that shows that interlinking that would suggest that that, in fact, is the case? And the reason I ask that question is when you look at Herman, which is the one case in which they applied 41B in the post-conviction context, Herman used the Westinghouse framework. Herman referred to no post-conviction cases in resolving that issue under 41B. It used Westinghouse. It didn't refer to Adams versus state. It didn't refer to Julian. It referred to Westinghouse. So we're so it's not clear to me at all. And I'd like your response to why that necessarily would be the case. In Finlay's in itself, in the the court said that in looking at the Westinghouse factor, you have to look at the factors that and they cite to Julian, which is also relied on in Adams and said there can be no danger that continued imprisonment has been deprived of fundamental rights would be justified by the mere passage of time. And so they're looking at that in the Finlayson case, really, for the first time. Herman didn't raise that. It was just is an injustice because he had plenty of time to raise those issues. But in Finlayson itself, they're taking in the Adams and Julian language and saying that's part of Westinghouse in a post-conviction. And that is a new that is a new rule. It's not been applied before. OK, well, that goes perhaps to the question of independence, but the adequacy point still remains to be said. Why, in fact, would it be the case that one would have to find more than one post-conviction case in order to be able to say that rule 41 B is applied with regularity in and even handedly in the context of. Well, the application of rule 41 B. I think that what what is looking what you're looking at, certainly if there was one case out there and it happens to have been unpublished, it was in 2004 before this issue was presented to the Finlayson case. It's not cited in Finlayson in this by the state in the state case, but it is it is it is one case, but it doesn't set the framework. And the framework is that Westinghouse has to include in these criminal cases the concepts of Hearst versus Cook. And that's why it's not adequate. Yes, you could apply a a limitations case. You could in a certain situation dismiss a case on that ground as long as you when you looked at it, you measured the merits as well. And the court didn't do that. And that's what's new in this case. OK, so so and so it does double duty essentially is what you're saying. This this need to have the Hearst versus Cook component both means that state law was involved and therefore was not independent. And it also was not adequate because we've only got the one case. Is that it? That's that's that's the argument. Yes. And Herman didn't had Herman set that out. I think I would be in a different, much more difficult position, but it didn't. OK, if I could move on to the Martinez issue. This is a matter that two district court judges have looked at as to the rule in in Utah on appeals and have come up with entirely opposite conclusions. And we believe that just Judge Benson's conclusion is the better one. And it applies that Martinez applies because the only types of ineffective citizens claims that can be raised on direct appeal through the ancillary rule. 23b motion are those claims which are obvious from the record that rule 23b does not put on to appellate counsel the duty to investigate fully habeas claims that are usually found outside of the record. Let me can I ask you to parse that a little bit, because it again presented so well, but when I when I read it and when I hear you just now, it seems to be that you're subtly blending two distinct concepts. One is the opportunity. Can a trial counsel file an appeal based on ineffective assistance of trial counsel on on a direct appeal? Well, there's no question that they can because that listens trial counsel did that. It was right. So there's no question that can be raised. You also make a very well articulated argument that, oh, Oklahoma's rule 3.11 is different because here there's no obligation, as you're pointing out, there's no obligation to present anything other than an obvious deficiency on the part of trial counsel. So the problem is, from my standpoint, is that the issue is not whether or not there's an obligation. The issue is whether there is an opportunity, whether someone can raise in effect IAC of trial counsel on a direct appeal. The question really, and I think it's it's actually pending in front of the Utah Supreme Court now, and it is what is the responsibility of the U.S. Supreme Court to make sure that the U.S. Supreme Court is able to do that? The U.S. Supreme Court is not supposed to go out and do what one of the court's appeals decisions that I've cited says it's a fishing expedition. They're not to amass evidence of ineffective assistance of trial counsel. It's basically if it pops up, if it shows to them, then they can do that. They have the opportunity to do that. And the rule was originally established to keep to have those things done expeditiously to keep people who have a valid Sixth Amendment claim not in custody as little as possible. But for example, in federal court, 2255s cannot be raised in most circuits until after the direct appeal. They could be raised, but they're not. Right. And I wasn't totally different. But can I at the risk of monopolizing your time. So I apologize. But so hypothetically, let's say trial counsel in this state says, well, my Mr. Finlayson tells me that he has all of these alibi witnesses, none of whom have been called. And I'm going to file an app. And so I want to pursue an ineffective assistance of trial counsel for failure to investigate. And so I want to file a motion for a remand in order to be able to develop that argument that there was IAC based on a failure to investigate. Are you saying that that that would be improper that you can't do that because it goes beyond an obvious defect or a defect that's not obvious from the record? Sure. Well, the question would be for that that attorney. Does he have a duty to do that? Even if Mr. Finlayson says, yeah, this is it. Or does that attorney say, well, it's not obvious from the record. You're telling me a lot of things that I don't know. I have to go out and look at the file. I have to go out and and investigate. I have to amass evidence. And that's not what Rule 23B is meant for. That's not obvious from the record. It may be what Mr. Finlayson said, but that's not what the responsibility of appellate counsel would be in that situation. That would be basically saying to the back to the state court judge saying, I want to remand because I have to now go out and find these alibi witnesses. I'd like to get investigators to do that. I need all these funds. I have to go out and do that because I don't have concrete affidavits from these alibi witnesses that would justify a remand. And I can't speculate because my client has told me that. So I'm very limited. And what the state court has done is to say, if it's obvious from the record, you have a duty to do it. If it's not obvious from the record, there is no duty to do it. And there is no real opportunity because you're using Rule 23B in a way that you should not use it. Wait a minute. Should not or do not have to. Those are two different things. They're not going to kick the ineffective assistance of counsel argument because it's not obvious from the record, are they? They would they would say that if unless the the counsel went outside the record and took it on his or her responsibility or on her on her own to go out and find those alibi witnesses, the court is not going to remand under Rule 23B to do what they call a fishing expedition or an attempt to develop evidence. I'm not saying it's improper to do that. You're just saying that the rule did not contemplate that that was the duty of the lawyer to do that. Right. Right. But but but also, if you if you if you don't do it, you have if you don't take on that extra responsibility, you can raise that in post conviction and you're not required to raise it on on the on direct appeal. And therefore, Martinez applies. Well, let me ask this question to wrap this up. I know your time's over, but I want to explore this issue. Where do you have any case that says this question of what the duty of the lawyer is or the or what the what the lawyer should be considered themselves obliged to do under the state rule really matters for Martinez Trevino rubric? I mean, and this goes to just back to your earlier point where it seemed to me that rule just contemplates. Did you have a chance? I mean, it's not it's not a question of. And so does where does this whole duty concept play into any of it? Well, for example, in in most instances, there's no prohibition in most states to file a post conviction petition at some point, even while the appeal is pending. Yes, and that's where that's what we're talking about in terms of Martinez. And what I'm saying is, is what is Martinez seems to at least and it seemed the Supreme Court intentionally created this very narrow opening to address a problem where you could create a fundamental injustice by not allowing for the trial counsel and effective assistance to be pursued. And and I didn't see anything in that narrow opening that says, well, we have to consider. Well, were they required to do it or did they? It seemed to me the operative thing was opportunity. And what I want to know from you, I'm asking specifically, what's your best case that says that this whole question of duty, what you're obliged to do shouldn't matter at all. Well, I think Trevino talks about what is the scope on an appeal, what what issues are raised, how can they be dealt with or do you deal with them outside? And I think that would be the issue is what is the practice in that state? And they can vary. And what I think Judge Benson found is that there is a limited, narrow ability to raise ineffective assistance of counsel claims. And that means that other claims that are not in that narrow, limited circumstance, you you can't raise on direct appeal. You could file a post conviction at the same time, potentially. But you're not your direct appellate. And it's only on the direct appeal. And so I think Trevino in that way is the best case. Thank you, Mr. Barnes, I appreciate it. Thank you, counsel. May it please the court. Aaron Riley from the Attorney General's office representing the appellee. Clearly, the Martinez exception alone does not apply in Utah because defendants can and do raise ineffective assistance of counsel claims on appeal. So the question really is only whether the Trevino exception that expanded that applies in Utah. In cases where the actual operation within the state makes it virtually impossible to raise claims. And that is not the case in Utah. Not only do appellate counsel have the opportunity to raise ineffective assistance of trial counsel claims on appeal, but they do it all the time. In fact, the majority of all ineffective assistance of trial counsel claims can be raised on appeal. I think the argument that Mr. Barnes makes that somewhat that is somewhat intriguing that I just want to be specifically to make sure I understand your response to is this whole question of what the rule contemplates the duty of the lawyer to be. And to only to essentially the rule contemplates that you will raise obvious from the record ineffective assistance of counsel claims. How does that cut against or does that cut it all against the Trevino requirement of opportunity? Or how does it qualify that that that requirement if at all? Well, actually, to start with your honor, that is false. The rule itself says when filing a 23 be motion. The motion requires an allegation of facts constituting ineffective assistance of counsel, not fully appearing in the record. So the rule itself requires facts that are not appearing in the record, because if the facts appear in the record, you don't need an extra evidentiary hearing, you can just proceed with your claim on the record. I think the most helpful Utah case or a very helpful Utah case that explains this and how to proceed is state versus Griffin. That's at 441 Keith third 1166. It's a Utah case from 2015. The district court judge cited that in his ruling and I believe the state included it just as one of the appellate cases. But that rule talks about what actually has to be done. And when an appellate attorney files a rule 23 be motion seeking an evidentiary hearing, they have to make a proffer of facts. But that proffer can be an affidavit. And it can even just be an affidavit from the defendant and hearsay may be included in the proffer. Now, some of the old cases disputed that but Griffin makes that very clear that those cases are refuted that for the proffer for the motion hearsay can be sufficient. In other words, the defendant could say, john Thompson told me such and such. And if that's true, it would establish ineffective assistance of counsel. In addition, appellate counsel in Utah do have the use of investigators prior to filing their 23 be motion. And of course, private attorneys always can do that. And once the evidence, if the motion is granted, and an evidentiary hearing is granted, then counsel also may use compulsory process to require witnesses to testify at the hearing. So in fact, the rule itself contemplates facts outside the record. Mr. Finlayson is comparing apples and oranges when he's talking about things obvious from the record. What the obvious from the record issue deals with is when a petitioner and post conviction makes a claim of ineffective assistance of appellate counsel for omitting a claim, he has to show that the claim was obvious from the record. But if defendant and appellate counsel are aware of allegations of fact not fully appearing in the record, the defendant does have an obligation and burden to remove for to move for remit remand under 23 be if it would be ineffective not to. So what what those cases are talking about is when appellate counsel's is ineffective. Now, obviously, a part of appellate attorney's job is to winnow out cases or claims that he thinks are less likely to prevail on appeal. So counsel doesn't have to raise every claim and counsel doesn't have to always seek a 23 be hearing Miss Miss Riley. We were disconnected the the excitement of operating under Zoom. Judge Bacarach is still not present, I think. And and if you wouldn't mind, just pause for a quick second and we'll see if we can get this thing together. We live in an interesting time, but but I think we should be able to resume in a quick second here. Judge Bacarach, you're back with us. Yes. If I'm the only one that lost. Oh, no, you are not the only one. I think there was some problem in our Oklahoma City connection here. Okay. Okay. Um. Let me let me put it this way. The last place that I was that the last comment I heard you make Miss Riley before you before I went black on this or dark on this was that that the rule itself contemplates you going finding ineffective assistance of claims beyond the record. And therefore, that point that that that it's only obvious things from the record was not true or not was counsel was mistaken on that. So if you wouldn't mind, I'm sorry, Judge Carson, but if you wouldn't mind, pick up from there, please. Is that fine? Yes. Okay. Well, where's the notion come from, then that there's the only duty is to to address ineffective assistance of counsel claims that are obvious from the record. I mean, I'm sure Mr. Barnes had a foundation for that. I mean, what is it? That comes from cases where in post conviction, the petitioner is alleging that appellate counsel was ineffective for omitting a claim that was obvious from the record. In other words, appellate counsel can't be ineffective for not raising a claim he didn't know anything about. And that's where those cases come from, is when they're talking about ineffective assistance of appellate counsel. Okay. But I take it it would be your contention, though, that there is nothing in the rule itself that would preclude counsel from raising ineffective assistance of counsel claims that were not obvious from the record. And in fact, I mean, not only would there not be a prohibition against it, but the practice in Utah would contemplate that one could do that. Yes. Okay. A helpful case for that. And the district court judge cited this case in its list of cases is state versus Griffin for 41 P third one one six six. It's a Utah Supreme Court case from 2015. Now, there were some earlier cases that didn't think hearsay in the affidavit was sufficient, but the more recent cases and particularly Griffin say that for purposes of the proffer for the motion hearsay is sufficient. Could you speak to me about this Hearst versus Cook issue and and as it relates to the procedural default, the sort of antecedent issue, whether there was a valid procedural default? And I guess my my question would be that that sort of framework did double duty, at least as I understood in Mr. Barnes argument that both the need to fold in this this heightened, if you will, standard as it relates to fundamental miscarriage of justice. The state's position is that argument is completely irrelevant, that that's comparing apples and oranges. The first of all, the interest of justice exception in the Post Conviction Remedies Act only applies to the Post Conviction Remedies Act statute of limitations. In other words, if the petition was untimely, the court could look at the interests of justice to decide whether it would allow the case to proceed at all or not. Well, that's what I gleaned from Adams versus state. But but it's my my understanding from Mr. Barnes that Hearst versus Cook, I think that was the case that he referenced contemplates a broader scope on that on that principle. Is that is that not your understanding? Some of the earlier common law cases and Hearst is one talks about procedural bars and the unusual circumstances test, and when it would be unconscionable not to reexamine a claim that was already raised or that could have been raised on appeal. But the difference here is that those the court's discretion in post conviction to look at those things are looking at whether the claims can proceed at all in post conviction. That's entirely separate from the rule 41 B motion, which is you got to court already. Your petition is in front of the court and you just simply didn't proceed with it. You did nothing to go forward with your case. So I'm sorry. So it would be your view that the Westinghouse framework in 41 B in that context does not contemplate incorporating this heightened interest of justice standard that that was in Hearst. Because I noted in the Herms case that they cited Westinghouse and they cited another 41 B case. It was not a post conviction case, which at least led me to believe that that in 41 B, this whole notion that's in Adams versus state doesn't apply. So if I'm clear, what I'm saying is, is it your position then that in the 41 B context, Westinghouse interest of justice does not incorporate any sort of heightened interest of justice standard. Correct. And the Westinghouse factor requires looking at whether injustice would result or whether injustice has occurred. And that requires looking at injustice to both parties. So it's not just looking at the petitioner. It's looking at what injustice has occurred to the other party due to the delay in the case. Can I probe this a little bit, Miss Riley? So I think you had pointed to Rohan versus Bozeman, in which you cited, and I think appropriately for the proposition that a court can dismiss for failure to prosecute under Rule 41. Even when there is an injustice would result from dismissal, particularly as the court says when the plaintiff has had more than an ample opportunity to assert his interest. Now, so a court, if you apply the Westinghouse factors, can dismiss even when there is what an injustice would otherwise occur. Now you take Mr. Parnes argument that when you're looking not at just the run of the mill civil case, but you are looking at a post conviction challenge. The Utah Supreme Court takes a more rigid, inflexible approach and says that the unusual circumstances test that you were alluding to was intended to assure fundamental fairness and to require reexamination of a conviction to determine whether it would be unconscionable not to reexamine it. In other words, I think Mr. Parnes argument is precisely because of what you said under Westinghouse, there is a completely different application of the Westinghouse factors, particularly with regard to the interest of justice, when you are talking about a post conviction proceeding. I disagree, Your Honor. Again, I think those are two separate issues. In other words, when the petition was first in front of the post conviction court, the statute and the rules at the time, which have since changed, did require the court to consider whether the petitioner's claims were barred because they were untimely or were raised before or could have been raised before. And that may have already occurred in this case, because in fact, the court ordered the state to respond and the state responded with a motion for summary judgment. So it's an entirely separate issue from then, whether the petitioner proceeded with his case or not. Motions to dismiss for failure to prosecute are not unusual. Any competent counsel understands that if you never proceed with your claims, you face the possibility of the petition getting dismissed. So accepting that is true. I mean, how often do you really see these Rule 41 motions in the habeas context? I was just thinking through. I don't think I've ever seen one that was counseled that was dismissed for failure to prosecute. Not just in Utah, but anywhere. Well, that's an interesting question, Your Honor. I think there are a couple of reasons for that. First is, we may not see very many cases on appeal. That doesn't mean that doesn't happen in the state district court. Because petitioners who are proceeding with a state post conviction action, oftentimes their main intent or purpose is to get out of prison. And so they're motivated to proceed with their case. And yet, once they get out of prison, sometimes they don't care anymore because they've already received what they were aiming for or fighting for. And so they do sometimes drop their cases and don't continue to prosecute them. Well, let me let me ask you something else about just about proof. So there really is a dearth of authority in Utah about this rule being applied in the habeas context. So very few cases. I mean, I think there's only one other one that anyone has cited other than this one. How is anyone supposed to prove whether the rule is evenly applied or not, if it all dies at the district court and we're just not seeing them? I mean, do they have to do like they did in Wyoming, where someone has to go scour the records of all habeas cases and cite to docket sheets and stuff? Or, I mean, how do you ever prove it? I think the first answer to that is that that's looking at too narrow of a scope. I see my time is up, but if I might just finish here. The rule dismissal for failure to prosecute applies to all civil cases in the state of Utah and post-conviction cases are civil cases. A general default can be applied even if there's no exact precedent for the precise factual situation, even if there were no post-conviction cases that were dismissed for failure to prosecute. The rule itself is applied all the time or frequently in Utah to civil cases and post-conviction cases are civil cases. And so we do have a lot of cases to look at to see how the rule is applied and how it's been applied for the last 45 or 50 years. The Westinghouse case that set out the things to look at is from 1975, and that very clearly establishes how the rule is applied and that it is adequate. Thank you. All right. Thank you. Mr. Parnes, 30 seconds if you want it. Bill, I'm sorry. In regard to Rule 23B, it's not just the rule, but it's the way the courts have interpreted that rule. And that rule was interpreted not to do very limited function and not to expand the record, not to require people to go and do a habeas, do ineffective assist the counsel. I disagree with the state in terms of the argument that anybody can do it. It's been done. It's been done recently that way because of concerns about that. But historically, it's not been done. It's been very limited. And Ms. Riley and I have a case that's in front of the Utah Supreme Court now, McLeod v. State, that we argued three, four months ago that is dealing with that issue of what exactly are, is Rule 23B, how expansive is it? Is it something that everybody has to go and do that just because you have the opportunity, therefore, you have to do it or not when you're appointed as appellate counsel? And I think those are very different animals of habeas and appeals, and they're getting mixed in Utah. It's not clear. And I think Judge Benson was right. Thank you. All right. Thank you. Case is submitted. Thank you for your arguments, counsel. Thank you.